# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 27, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2018AP1145-CR**
**2018AP1146-CR**

**STATE OF WISCONSIN**

Cir. Ct. Nos. 2013CF4702
2013CF4798

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

KRIS V. ZOCCO,

   DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County: DANIEL L. KONKOL and CAROLINA STARK, Judges. *Affirmed*.

Before Kessler, Brennan and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. A jury convicted Kris Zocco of knowingly possessing sixteen recordings of child pornography. Zocco raises numerous issues on appeal. First, Zocco argues that the circuit court erroneously denied his motions to suppress evidence obtained from his apartment pursuant to two search warrants on the grounds that: (1) probable cause did not support the issuance of a warrant for the search of photos and videos on Zocco's smartphone, the execution of which led to the issuance of a subsequent warrant to search "devices" on which the child pornography recordings were found; and (2) the seizure of an external hard drive and CDs exceeded the scope of that subsequent warrant. Second, Zocco argues that the evidence was insufficient to establish that he knowingly possessed the sixteen child pornography recordings. Third, Zocco argues that he is entitled to a ***Machner*** hearing on whether trial counsel was ineffective for not requesting a supplemental jury instruction that defined the knowledge element of the charged crime.[1] Fourth, Zocco argues that the court erroneously rejected Zocco's "other acts" objection and motion for a mistrial related to the State's reference at trial to uncharged images of child pornography located on the CDs seized from Zocco's apartment. Fifth, Zocco argues that he is entitled to a new trial in the interest of justice because of the errors alleged above. Sixth, Zocco argues that the court erroneously exercised its discretion in imposing sentence based on the court's deeming Zocco to be a "consumer" of child pornography and on the aggravated nature of the contents of the recordings. Seventh, Zocco argues

---

[1] *See **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). Zocco argues in the alternative that his due process rights were violated by the circuit court's failure to provide the supplemental jury instruction. However, he forfeited this claim by failing to request the instruction. His independent due process argument fails for the same reasons, set forth in the discussion below, that his ineffective assistance of counsel claim fails; therefore, we do not address his independent claim separately.

that the court improperly required as a condition of extended supervision that he "not be involved in any conduct that rises to the level of a finding of probable cause that you have violated the criminal law." For the reasons stated, we reject all of Zocco's arguments and affirm.

## BACKGROUND

¶2 Following the execution of a series of search warrants at Zocco's Milwaukee apartment in October 2013, the State charged Zocco with drug and child pornography offenses. This appeal concerns the child pornography charges only. The complaint alleged that police "uncovered approximately 23 videos depicting child pornography" on an external hard drive and CDs that were seized from Zocco's apartment pursuant to the search warrants. The complaint charged Zocco with seventeen counts of possession of child pornography; the first sixteen counts concerned videos on the external hard drive and the last count concerned a video on a CD.

¶3 The circuit court denied Zocco's suppression motions challenging the search warrants, and the case proceeded to a jury trial. The jury convicted on the first sixteen counts and acquitted on the seventeenth count. After sentencing, Zocco filed a postconviction motion, which the court denied without a hearing. This appeal follows.[2]

## DISCUSSION

¶4 We address each of Zocco's arguments in turn.

---

[2] The Honorable Daniel L. Konkol presided at trial and sentencing, and the Honorable Carolina Stark denied Zocco's postconviction motion.

*I. Motions to Suppress*

¶5      Zocco argues that the evidence found on the external hard drive and CDs should have been suppressed because:  (1) probable cause did not support the issuance of a warrant for the search of photos and videos on Zocco's smartphone, the execution of which led to the issuance of the warrant to search "devices" on which the child pornography recordings were found; and (2) the seizure of the external hard drive and CDs exceeded the scope of that subsequent warrant.  We first summarize the standard of review and applicable legal principles; we next provide additional pertinent background; and we then explain why we conclude that Zocco's challenges to the issuance and execution of the two search warrants fail.

*A. Standard of Review and Applicable Legal Principles*

¶6      "Whether a search and seizure is constitutional remains a question of law that we review *de novo*…." **State v. LaCount**, 2008 WI 59, ¶34, 310 Wis. 2d 85, 750 N.W.2d 780 (italics added).

¶7      In our review of a challenge to the issuance of a search warrant, we are limited to the record as it existed before the judge at the time the warrant was issued. **State v. Sloan**, 2007 WI App 146, ¶8, 303 Wis. 2d 438, 736 N.W.2d 189. The question before us is whether the judge "was 'apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched.'" **Id.** (citation omitted).  "The well-established test for probable cause is that it is 'flexible,' and is 'a practical commonsense decision' that is made considering 'the totality of the circumstances,'" **State v. Silverstein**, 2017 WI App 64, ¶22, 378 Wis. 2d 42, 902 N.W.2d 550 (citations omitted), and the judge

issuing or denying the warrant "may make the usual inferences reasonable persons would draw from the facts presented." ***State v. St. Martin***, 2011 WI 44, ¶16, 334 Wis. 2d 290, 800 N.W.2d 858 (citation omitted). "In reviewing whether there was probable cause for the issuance of a search warrant, we accord great deference to the determination made by the warrant-issuing [judge]." ***State v. Ward***, 2000 WI 3, ¶21, 231 Wis. 2d 723, 604 N.W.2d 517.

¶8 In our review of a challenge to the execution of a search warrant, we are guided by the principle that "[a] search warrant's execution must be conducted reasonably, and the search and seizure must be limited to the scope that is permitted by the warrant. Whether a seized item is properly within the search warrant's scope depends on the search warrant's terms and on the nature of the items that were seized." ***LaCount***, 310 Wis. 2d 85, ¶38 (citations omitted).

*B. Additional Background*

¶9 While Zocco challenges only the second and third of a series of four search warrants issued in October 2013, we provide background as to all four warrants in order to provide necessary context for the analysis of his challenges.

¶10 The first warrant was issued on October 16, 2013, to search Zocco's apartment on the 18th floor of a Milwaukee apartment building for drugs and drug paraphernalia. The search warrant affidavit made the following pertinent assertions. A woman, K.D., was reported missing on October 12, and video surveillance at Zocco's apartment building showed K.D. with Zocco at his apartment building on October 10, the night before her cell phone stopped activity; the video surveillance did not show K.D. leaving the building. Zocco told police that on the night of October 10, he and K.D. left the apartment to purchase cocaine, returned to the apartment and used some of the cocaine, "may have"

smoked marijuana, went out to a club, returned to his apartment and used the rest of the cocaine, and K.D. performed oral sex on him. Zocco's statements about both his and K.D.'s dress and comings and goings during that time were contradicted by the building's surveillance footage. Video surveillance showed Zocco leaving in his vehicle on the evening of October 11 and returning in the vehicle during the afternoon of October 12. After parking, Zocco removed from his vehicle's front passenger compartment a small white plastic bag, which the officer believed contained cocaine and marijuana.

¶11    The second warrant was issued on October 18, 2013, to search the contents of Zocco's smartphone for evidence of homicide, mutilating or hiding a corpse, and drug offenses. Zocco had been arrested on October 17 with his smartphone on him. The affidavit for the October 18 search warrant reiterated the first warrant information summarized above and related the following results of the search executed pursuant to the first warrant. Police found cocaine and marijuana in Zocco's apartment and noticed that the shower curtain in the bathroom had been ripped off and was missing. A cadaver dog detected the odor of human remains in the first-floor trash room of Zocco's building, in the parking area about twenty-five feet from Zocco's assigned parking space, in the 18th-floor trash chute, and at the exterior door of Zocco's 18th-floor apartment. The cadaver dog also detected the odor of human remains in Zocco's bathroom and laundry and on Zocco's bed.[3]

---

[3] This last sentence refers to the results of another warrant that was issued the day before this second warrant, when Zocco was arrested; we do not separately identify this warrant because the parties treat it as incidental.

¶12     The third warrant was issued on October 22, 2013, to search for evidence of representations depicting nudity, including items used to restrain a person's arms and legs, and "[c]ameras, video recording devices, or any other device capable of capturing photo and video images, to include a detailed forensic examination of the contents within."  The search warrant affidavit reiterated the information in the prior two warrant affidavits and noted evidence obtained from the prior warrants.  The evidence retrieved from Zocco's phone as a result of the second warrant included photos and one video of K.D., taken in the bedroom of Zocco's apartment.  In one photo K.D. was lying on her back naked, eyes closed, mouth open, hands bound, and apparently unconscious.  Another photo depicted K.D. naked, lying face down on a bed, with her hands and feet bound.  A third photo depicted K.D. in the same position with her eyes closed and mouth open, seemingly unconscious, with a hand on the back of her head pushing her face into the bed.  In the video, K.D. was blindfolded and apparently unaware of being recorded, performing oral sex on a man with his hand pushing her head down.

¶13     A fourth warrant was issued on October 23, 2013, to search specific "data storage devices" seized from Zocco's apartment for child pornography.  The search warrant affidavit stated that, in executing the third warrant described above, police seized data storage devices and found on a CD a video of a prepubescent girl rubbing a dildo on her vagina, which is the basis for one of the charges in this case.  It was in executing this warrant that police found the remaining sixteen child pornography recordings charged in this case.

¶14     Zocco challenged these four search warrants on various grounds in both pretrial motions and his postconviction motion, all of which were denied.  On appeal, he challenges only the second and third search warrants, and we proceed to address each challenge in turn.

### *C. Probable Cause Supporting the Second Search Warrant*

¶15    Zocco argues that there was no probable cause to search his phone for photos and videos pursuant to the second search warrant.  Specifically, he argues that the second search warrant was supported by probable cause only "to search for evidence of Zocco's drug offenses [and w]hile communications information would fall within that purpose, photos and videos would not." Zocco's argument is refuted by the record.

¶16    The second search warrant was issued to search the "contents" of Zocco's smartphone for evidence of homicide, mutilating or hiding a corpse, *and* drug offenses.  This warrant was supported by an affidavit that related Zocco's own statements of drug use with K.D., the seizure of drugs from Zocco's apartment, video surveillance showing K.D. and Zocco entering his apartment building but never showing K.D. leaving, a torn-off and missing shower curtain in Zocco's bathroom, the detection of the odor of human remains in Zocco's apartment and in areas of the building associated with him, and Zocco's false statements about his and K.D.'s dress and comings and goings around the time K.D. went missing.

¶17    We conclude that the facts stated in the affidavit suffice to support an honest belief that evidence linking Zocco to crimes related to K.D.'s disappearance and unlawful drug activity would be found on Zocco's phone, and that photos and videos on Zocco's phone properly constituted such evidence.  *See Sloan*, 303 Wis. 2d 438, ¶8.  Zocco's arguments to the contrary fail because they ignore relevant facts.

¶18    Zocco's argument that the warrant was supported by probable cause only to search for evidence of drug crimes, and that only "speculation" supported a

8

search for evidence of homicide and hiding a corpse, ignores the vast majority of the facts stated in the supporting affidavit indicating his involvement in K.D.'s disappearance.[4] This defect also sinks his argument that only "communications," and not photos and videos, may be searched for evidence of drug crimes. Regardless of the merit, if any, of his distinction between "communications" and photos and videos, his argument fails because the warrant was also supported by probable cause to search for evidence of the crimes of homicide and hiding a corpse, and he makes no argument that evidence of those crimes does not include photos and videos. Nor does Zocco argue that the photos and videos on his phone are not "contents" of his phone, as identified in the warrant.

¶19 Finally, Zocco's argument that the State conceded in its circuit court brief opposing Zocco's postconviction motion that, as asserted by Zocco, "probable cause for the warrant did not extend beyond evidence of drug crimes," takes the State's briefing out of context. The State argued pretrial that the second warrant established probable cause for crimes related to both the drug activity and K.D.'s disappearance. In his postconviction motion, Zocco argued that in making its pretrial ruling the circuit court had erred when it did not discuss "a connection between the phone" and K.D.'s disappearance. In its postconviction brief, the State responded to Zocco by arguing that the court's reference to only the drug-activity basis for the warrant did not render the court's admission of the cell phone evidence erroneous because there were ample facts supporting probable cause to search for evidence of drug crimes. That argument was not a concession that there

---

[4] His argument that the cadaver dog evidence must be ignored because it is not based on scientific evidence is unsupported by factual or legal authority, and, therefore, we do not consider it further. *See* **State v. Flynn**, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) (court need not address issues insufficiently developed or lacking citations to authority).

was not also probable cause to search for evidence of crimes related to K.D.'s disappearance.

¶20    In sum, Zocco fails to show that probable cause did not support the second warrant to search for the contents of his phone, including photos and videos, for evidence of unlawful activity related to K.D.'s disappearance and drugs.

*D.  Exceeding the Scope of the Third Search Warrant*

¶21    Zocco argues that the seizure of the external hard drive and CDs exceeded the scope of the third search warrant.  Specifically, he argues that the "objects of search" described in the warrant, "[c]ameras, video recording devices, or any other device capable of capturing photo and video images," do not include the external hard drive and CDs seized pursuant to the third search warrant.  Zocco's argument is refuted by statutory definitions.

¶22    The third search warrant was issued to search for evidence of representations depicting nudity in violation of WIS. STAT. § 942.09(2) (2013-14).[5] It was supported in part by photos retrieved from Zocco's phone showing K.D. naked and apparently either unconscious or unaware that she was being recorded. The warrant authorized the search of "[c]ameras, video recording devices, or any other device capable of capturing photo and video images, to include a detailed forensic examination of the contents within."  In executing the third warrant, police seized an external hard drive and CDs from Zocco's apartment.

---

[5] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.  We observe that the changes that have been made to the statutes cited since 2013-14 are not material to the issues on appeal.

¶23    WISCONSIN STAT. § 942.09(2) prohibits "captur[ing] a representation that depicts nudity" without consent.  The statute defines the pertinent terms as follows.  "'Captures a representation' means takes a photograph, makes a motion picture, videotape, or other visual representation, or records or stores in any medium data that represents a visual image."    Sec. 942.09(1)(a).  "'Representation' means a photograph, exposed film, motion picture, videotape, other visual representation, or data that represents a visual image." Sec. 942.09(1)(c).

¶24    We agree with the State that the external hard drive and CDs are devices that record or store data that represent visual images; that devices that record or store data that represent visual images "capture" representations of the images as "captures a representation" is defined by WIS. STAT. § 942.09(1)(a); and that, therefore, police did not exceed the warrant's scope by seizing those devices because they are, in the words of the warrant, "capable of capturing photo and video images" within the meaning of the statute.  Zocco's arguments to the contrary ignore the statute.

¶25    First, Zocco argues that a CD is not a device, citing a dictionary definition of "device" as "a piece of equipment or a mechanism" and arguing that a CD "is neither."  However, another dictionary defines "device" as "a thing made or adapted for a particular purpose," *see Device*, Dictionary.com and Oxford University Press, http://www.lexico.com/en/definition/device (last visited August 21, 2019), and the statute defines "captures a representation" as "records or stores in any medium data that represents a visual image."  WIS. STAT. § 942.09(1)(a).  It is obvious that CDs are things capable of either recording or storing data that represent visual images.  Moreover, the complete text of the definition of "device" that Zocco cites is a "piece of equipment or a mechanism designed to serve a

special purpose or perform a special function." *Device*, Merriam-Webster, https://merriam-webster.com/dictionary/device (last visited August 21, 2019). Zocco does not explain how CDs are not "pieces of equipment" designed "to serve a special purpose or perform a special function."

¶26 Second, Zocco argues that, precisely because the external hard drive and CDs store files only and are "not capable of translating images to recorded form," like cameras or recorders, under the principle of *ejusdem generis* the external hard drive and CDs cannot be included by what Zocco calls the warrant's "catch-all" phrase, "or any other device capable of capturing photo and video images," which follows the references to "cameras, video recording devices." Again, this argument ignores the statute, which as explained above includes "stores … data that represents visual images" in its definition of "captures a representation." Under the statute, "captures a representation" includes not only any device that "takes" or "makes" images, but also any device that "stores" images. Zocco's reliance on the principle of *ejusdem generis* is inapposite in light of the statutory definition.

¶27 Third, Zocco argues that devices like the external hard drive and CDs that "merely store files" do not "capture" images under our holding in ***State v. Chagnon***, 2015 WI App 66, 364 Wis. 2d 719, 870 N.W.2d 27. However, ***Chagnon*** does not help Zocco. In that case, we held that "captures a representation" does not apply to cutting pictures from magazines and newspapers and pasting them into a notebook. *Id.*, 364 Wis. 2d 719, ¶¶2, 35. However, we also acknowledged that the part of the statutory definition of "captures a representation" as "stores" embraces the "collection and storage of digital data." *Id.*, ¶28. As the State notes, the external hard drive and CDs could be locations where Zocco could keep photos and videos that he may have taken as part of

"capturing" them; police in their investigation were not required to overlook the external hard drive and CDs just because they might contain images that Zocco did not himself take.

¶28    In sum, Zocco fails to show that the seizure of the external hard drive and CDs exceeded the scope of the third search warrant.

## II.  Sufficiency of the Evidence

¶29    Zocco argues that the evidence was insufficient to establish that he knowingly possessed the sixteen child pornography recordings.  Specifically, Zocco argues that the evidence "at best provides a basis for guesswork or speculation" that he had the knowledge required for conviction of possession because:  it was undisputed that the sixteen recordings were among "thousands of legitimate files"; there was no evidence that Zocco ever searched for child pornography, tried to encrypt or hide the files containing the recordings, knew their titles, or viewed or accessed the recordings; and "one cannot tell what files are likely to [contain] child pornography without actually viewing them."  We first summarize the standard of review and applicable legal principles; we next provide additional pertinent background; and we then explain why we conclude that the evidence was sufficient to sustain Zocco's convictions.

### A.  Standard of Review and Applicable Legal Principles

¶30    "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law, subject to our *de novo* review."  **State v. Smith**, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410 (italics added).

¶31 "[I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." *Id.* "It is well established that a finding of guilt may rest upon evidence that is entirely circumstantial and that circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *Id.* at 501.

¶32 To establish that Zocco was guilty of possession of child pornography, the State was required to prove beyond a reasonable doubt for each of the sixteen recordings charged that: (1) Zocco "knowingly possessed" the recording; (2) the recording showed a child engaged in sexually explicit conduct; (3) Zocco "knew or reasonably should have known" the recording depicted a child engaged in sexually explicit conduct; and (4) Zocco "knew or reasonably should have known" the child was under eighteen years old. *See* WIS JI—CRIMINAL 2146A. Zocco stipulated that the recordings contained child pornography. Accordingly, the State was required to prove that he knowingly possessed each recording, and that he knew or reasonably should have known that each recording showed a child under eighteen engaged in sexually explicit conduct.

¶33 "Knowing possession" means that a jury would need to find that the State had shown either that Zocco "knowingly had actual physical control of the recording" or that "it [was] in an area over which [Zocco] ha[d] control and

[Zocco] intend[ed] to exercise control over the recording." *See* WIS JI—CRIMINAL 2146A.

¶34    "Reasonably should have known" means that a jury would need to find that the State had shown that Zocco "had an awareness of certain facts and information that would have caused a reasonable person to conclude" that each recording showed a child under eighteen engaged in sexually explicit conduct. *See* ***State v. Schaefer***, 2003 WI App 164, ¶¶31, 37, 41, 266 Wis. 2d 719, 668 N.W.2d 760 (statute requiring that the State show that the defendant "reasonably should know" that the pornography he or she possesses depicts a minor means that "[t]he State must show that the defendant had an awareness of certain facts and information that would have caused a reasonable person to conclude that the persons depicted in the materials were minors").

## B.  Additional Background

¶35    At trial, the State called Zocco's apartment property manager and five detectives; Zocco called a forensic computer analyst.

¶36    The property manager testified that the apartment was leased by Zocco and that Zocco was the sole occupant.

¶37    Detective Corbett testified that police found thirty-nine CDs and an external hard drive in a bedroom in Zocco's apartment.  Police did not find any device in Zocco's apartment that could play a CD.

¶38    Detective Walisiewicz testified that he inspected the thirty-nine CDs seized from Zocco's apartment and found child pornography on five of them.

¶39 Detective Lips testified as to his training and experience with forensic computer analyses and child pornography cases. He testified that he inspected the contents of the external hard drive and the CDs containing child pornography, and Detective McKee testified that he peer-reviewed Lips's report and concluded that Lips followed protocols. For each child pornography recording for which Zocco was charged, Lips identified the title and described what the recording showed; he also testified as to the terms in the recording titles that are common child pornography search terms and that are commonly associated with child pornography.

¶40 Lips testified that he found child pornography in two different user-created folders on the external hard drive. Inside a folder labeled "ACG lap savrs" Lips found a subfolder labeled "Previews," which contained the child pornography recordings charged in Counts 1 through 5. Inside a folder labeled "LimeWire" Lips found a subfolder labeled "more moves," which contained the child pornography recordings charged in Counts 6 through 14, and a subfolder labeled "temp move," which contained the child pornography recordings charged in Counts 15 and 16.

¶41 What follows is a list of the title of each recording by count:

**Count 1:** C\acg lap savrs\Previews\Preview of - Best Vicky BJ & Handjob with sound .mpg

**Count 2:** C\acg lap savrs\Previews\Preview of BabyJ - chairraped 4yo.mpg

**Count 3:** C\acg lap savrs\Previews\Preview of pedo.mpg

**Count 4:** C\acg lap savrs\Previews\Preview of raygold sex and blowjob scene.mpg

**Count 5:** C\acg lap savrs\Previews\Preview of Underage - Oral and Ride.mpg

**Count 6:** C\LimeWire\more moves\Vicky willing bed rape pthc llyo kdquality.mpg

**Count 7:** C\LimeWire\moremoves\-4yogirl sucks and eats cum pedo r@ygold hussyfan lolitaguy Ism pthc babyshivid.mpg

**Count 8:** \C\LimeWire\more moves\- Best Vicky BJ & Handjob with sound (r@ygold pedo reelkiddymov underage illegal lolita daughter incest xxx oral handjob).mpg

**Count 9:** C\LimeWire\more moves\BJAfileOfNow - 7yo Guat chick gets fucked in backseat and remains silent hussyfan r@ygold pthc lyo 2yo 3yo 4yo 5yo.mpg

**Count 10:** \C\LimeWire\more moves\BJAfile OfNow - real underage lyo gets cock fucked pussy rubbed by daddy baby pussy cunt rub pthc hussyfan r@ygold babyshivid 2yo 3yo 4yo 5yo 6yo 7yo.avi

**Count 11:** C\LimeWire\more moves\child sexually abused Mafia Sex.Ru_Children_Kids_Hard_000013_ R@ygold_Mexican_Girl_Really_Good_Pthc_Child_Sex_P orn_Pedo_5.48.mpg

**Count 12:** C\LimeWire\more moves\goicochea Vincent pedofilia collection R@ygold PEDO - Raygold Russian IIYo Preteen (no sound).mpg

**Count 13:** C\LimeWire\more moves\Kids Teens Women (Porno-Lolitas-Preteens-ReelkiddymovR@Ygold-Hussyfans-Underage-Girls-Children-Pedofilia-Pthc-Ptsc-Xxx-Sexy

**Count 14:** C\LimeWire\more moves\real underage fuck cum baby 2yo rape crys Babyshivid husssfan r@ygold pthc-2Yo Toddler Naked On Mans Lap (Pthc Pedo Babyfuck}lyo 2yo 3yo 4yo.mpg

**Count 15:** C\LimeWire\temp moves\8 Best little girl in a pink dress, r@ygold hello video (illegal underage lolita preteen pedo).mpg

**Count 16:** C\LimeWire\temp moves\(Pthc) 6Yo Babyj - Bedtime Rape Until Cum private pedo child girl lyo 2yo 3yo 4yo 5yo 6yo 7yo 8yo 9yo lOyo vicky laura jenny sofie fdsa hussyfan russian korea.mpg

17

¶42 All of the recordings showed only girls, and eleven of the sixteen recordings showed girls performing oral sex on adult men.

¶43 Lips testified that he found on the external hard drive the following materials associated with Zocco: a subfolder labeled "iTunes" that contained a music library belonging to "Kris"; and subfolders containing Zocco's resumés and photographs.

¶44 In a subfolder labeled "My Playlist" Lips testified that he found a playlist containing links to videos with explicit titles indicating child pornography content.

¶45 Lips testified that on a CD found alongside the CD charged in Count 17, police found both child pornography and a "Kris Zocco" TiVo payment document.

¶46 Lips testified that the recording charged in Count 17 was one of about 150 files on that CD, and that its title was not indicative of child pornography.

¶47 In his testimony, Lips acknowledged that: there was no evidence that Zocco searched or viewed websites for child pornography or had the capability of playing the CDs; the external hard drive had not been used since 2009; people generally do not "stop" interest in child pornography, but Lips has observed a "trend" of fewer downloads in child pornography investigations as technology has advanced, internet speeds have increased and child pornography has become more widely available; and the child pornography recordings on the external hard drive represented a very small fraction of a percent of the files on the drive.

¶48 Lips testified that on the external hard drive there were neither profiles nor folders with information of people other than Zocco, that the files on the drive were not predominantly work-related, that the names of possible user profiles that Lips could see were either overwritten or deleted and were not currently in use, and that the only information indicating who would have been using or controlling the drive was comprised of the files associated with Zocco.

¶49 Lips testified that the child pornography recordings found on the external hard drive were in the list of folders that any user could see, and that the list would "[h]it you right in the face."

¶50 The defense expert testified that he found tens of thousands of files and other computer users' profiles on the external hard drive, and that the list of folders was not readily apparent. The expert testified that he did not "remember" whether the forensic tool that he employed indicated that "anything at all was deleted at any point in time." He testified that it was his opinion that the external hard drive likely belonged to Zocco's company and was given to him for work, but that the manufacturing date on the hard drive threw "a monkey wrench" into that opinion. He testified that adult pornography can have child pornography titles, that the 1,700 "pornography type files" on the external hard drive contained adult or child pornography, and that there were tens of thousands of other files.

¶51 The State recalled Detective Lips, who testified how he knew the user profiles on the external hard drive were deleted or overwritten, that he did not find any user profiles other than Zocco's presently on the hard drive, and that none of the deleted user profiles could have been responsible for placing on the hard drive the content that was currently saved on the hard drive. He testified that a shortcut to a subfolder of the "ACG lap savrs" folder showed a user name of

"Zocco," and demonstrated how when he created a folder link using his own profile, the shortcut path name to that folder showed his user name. He testified that the majority of the video, music, and personal folders and documents on the external hard drive were pornography.

¶52 As stated, the jury found Zocco guilty on all counts involving the external hard drive (Counts 1 through 16) and not guilty on the count involving the CD (Count 17).

*C. Analysis*

¶53 The following evidence was sufficient to show that Zocco knowingly possessed the recordings on the external hard drive: the external hard drive was found in a bedroom in his apartment; the apartment was leased only to Zocco; the drive contained Zocco's resumés, photos, and music; the drive contained a playlist with links to child pornography titles of the recordings that would have had to be input into the playlist; and, as testified by Detective Lips, the only information indicating who would have been using or controlling the drive were the files associated with Zocco. This evidence shows that the recordings on the external hard drive were in an area over which Zocco had control and supports the inference that Zocco intended to exercise control over the recordings.

¶54 The following evidence was sufficient to show that Zocco knew or reasonably should have known that the recordings contained child pornography: the titles of the recordings, which contain terms that expressly refer to child pornography or that involve common child pornography search terms as testified to by Detective Lips; Lips's testimony that the titles were easily visible in the list of folders that any user would see; the uniformity of the contents of the recordings, showing only girls and mostly girls performing oral sex on adult men; and the

child pornography (along with a TiVo receipt in Zocco's name) found on the CDs in Zocco's apartment. This evidence supports the inference that Zocco knew or should have known that the recordings contained child pornography.

¶55    Zocco's arguments to the contrary do not persuade. First, Zocco argues that there was no evidence that he had saved or viewed or tried to hide the recordings, and the recordings comprised a very small portion of the total files on the drive. Zocco's argument that there was no direct evidence that he had saved the child pornography recordings to the external hard drive ignores the evidence that the only information indicating who would have been using or controlling the drive were the files associated with Zocco, which provided circumstantial evidence that Zocco knowingly possessed the recordings on the drive. Zocco's argument that there was no direct evidence that he ever saw the titles of the files ignores the evidence that the titles were easily visible in the list of folders that any user would have seen and that those folders contained other files directly connected with Zocco, such as his résumés and photos, which also provided circumstantial evidence that Zocco knowingly possessed the recordings on the drive. This argument also ignores that possessing is a separate and distinct crime from accessing under the statute. *See* WIS. STAT. § 948.12. Zocco's argument that the files were so few that they "easily could have been acquired by accident" merely posits an inference that a jury could have drawn. This court must follow the inference that supports the jury's verdict unless the evidence was incredible as a matter of law. *See State v. Alles*, 106 Wis. 2d 368, 376-77, 316 N.W.2d 378 (1982).

¶56    Second, Zocco argues that the evidence was not sufficient to show that he knew or should have known that the recordings contained child pornography. Specifically, absent direct evidence that he viewed or otherwise

21

knew of their contents, he argues that there was no evidence that he should have known their contents—that is, given the information known to him, a reasonable person would not conclude that the files contained child pornography. This argument disregards the titles of the recordings, which together with the evidence that the titles were in a list of folders that any user could see, that other files in the folders containing the titles were directly connected with Zocco, that the only user name found on the drive was Zocco's, and that the recordings were in user-created folders, support the inference that Zocco reasonably should have known that those recordings contained child pornography. Zocco argues that because one "cannot tell a book by its cover," a reasonable person would "investigate further or simply delete the files." To the contrary, the jury determined that a reasonable person seeing the titles could conclude that the files contained child pornography.

¶57 A jury could reasonably find that Zocco both knowingly possessed the recordings and should have known that the recordings contained child pornography. We conclude that the evidence was sufficient to sustain the convictions.[6]

*III. Ineffective Assistance of Trial Counsel Regarding the Jury Instructions*

¶58 Our supreme court has summarized the ineffective assistance of counsel standards as follows:

> Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact. The factual circumstances of the case and trial counsel's conduct and

---

[6] While the State in its respondent's brief generally presents well-supported analyses on the issue of sufficiency of the evidence, we observe that more than once the State presents in quotation language from cases that does not appear as quoted. We caution counsel to use quotation marks only for language that actually appears as quoted.

strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review *de novo*. To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial. If the defendant fails to satisfy either prong, we need not consider the other.

Whether trial counsel performed deficiently is a question of law we review *de novo*. To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness." In general, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance." Additionally, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference."

Whether any deficient performance was prejudicial is also a question of law we review *de novo*. To establish that deficient performance was prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*State v. Breitzman*, 2017 WI 100, ¶¶37-39, 378 Wis. 2d 431, 904 N.W.2d 93 (italics added and citations omitted).

¶59 To prevail on a claim of ineffective assistance of counsel, a defendant must present the testimony of trial counsel at a *Machner* hearing. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, not every postconviction motion alleging ineffective assistance of counsel requires a *Machner* hearing. *State v. Allen*, 2004 WI 106, ¶10, 274 Wis. 2d 568, 682 N.W.2d 433. The standard for whether a defendant is entitled to a *Machner* hearing is summarized as follows:

Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant to a hearing for the relief requested is a mixed standard of review. First,

> we determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief. This is a question of law that we review *de novo*. If the motion raises such facts, the circuit court must hold an evidentiary hearing. However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing.

*Allen*, 274 Wis. 2d 568, ¶9 (italics added and citations omitted). To provide nonconclusory allegations, a postconviction motion must present the "who, what, where, when, why, and how" with sufficient particularity for the circuit court to meaningfully assess the claim of ineffective assistance. *Id.*, ¶23.

¶60 In his motion, Zocco alleges that trial counsel provided ineffective assistance by failing to request a jury instruction that defined the charged offense consistent with applicable law. Specifically, he focuses on the "reasonably should know" requirement of the crime of possessing child pornography: "[w]hoever possesses" child pornography that "[t]he person knows, or reasonably should know … contains depictions of sexually explicit conduct" involving children. WIS. STAT. § 948.12(1m)(b). Citing *Schaefer*, Zocco alleges that trial counsel was deficient for not requesting a jury instruction that defined "reasonably should know" as "what a reasonable person [would] conclude … based on what the [person] actually knew." *See id.*, ¶¶40-41 ("The State must show that the defendant had an awareness of certain facts and information that would have caused a reasonable person to conclude that" the recordings contained child pornography.). Zocco alleges that he was prejudiced because without this instruction, the jury was "[left] to assume erroneously that the mere negligent failure of Zocco to learn or discover the nature of the recordings was sufficient for

conviction." On appeal, Zocco also alleges that "the [S]tate's [closing] argument misled the jury by relying on an improper simple negligence theory."

¶61    Zocco's allegations of prejudice are speculative and unsupported by the record. His contention that the jury must have interpreted "reasonably should know" as "the failure to exercise the care which a reasonable person would use in similar circumstances" is speculation that he does not tether to anything in the record. His citations to the State's closing argument neither reference a "mere negligence" theory nor frame the evidence in negligence terms. We agree with the State that there is no probability of a different result because given the number and titles of the recordings, the consistency of their contents, the other child pornography found, and the connections with Zocco, all as detailed in the preceding section, the jury could conclude that Zocco reasonably should have known that the recordings contain child pornography.

¶62    In sum, Zocco fails to meet his burden to show that he is entitled to a hearing on this issue.

## IV.  "Other Acts" Evidence

¶63    Zocco argues that the circuit court erroneously rejected Zocco's "other acts" objection and motion for a mistrial related to the State's reference at trial to uncharged images of child pornography located on the CDs seized from Zocco's apartment. We first summarize the applicable legal principles, next present additional pertinent background, and then explain why we reject Zocco's argument.

## A. Applicable Legal Principles

¶64    The admissibility of evidence lies within the circuit court's discretion. *State v. Dukes*, 2007 WI App 175, ¶26, 303 Wis. 2d 208, 736 N.W.2d 515.  A court properly exercises its discretion when it considers the facts of record, applies the proper legal standard, and reasons its way to a rational and legally sound conclusion. *Id.*

¶65    "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."  WIS. STAT. § 904.04(2)(a).  However, such evidence may be admissible when offered for another purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *Id.*  Moreover, not all evidence of prior bad acts constitutes "other acts" evidence in the eyes of the law. *State v. Seefeldt*, 2002 WI App 149, ¶21, 256 Wis. 2d 410, 647 N.W.2d 894.  "Evidence is not 'other acts' evidence if it is … inextricably intertwined with the crime." *Dukes*, 303 Wis. 2d 208, ¶28.  Such evidence is admissible as long as it is relevant and its probative value is not outweighed by the danger of unfair prejudice or other related concerns. *See* WIS. STAT. §§ 904.02, 904.03.

¶66    "The denial of a motion for mistrial will be reversed only on a clear showing of an erroneous use of discretion[.]" *State v. Ross*, 2003 WI App 27, ¶47, 260 Wis. 2d 291, 659 N.W.2d 122.  The court must decide, in light of all the facts and circumstances, whether the claimed error is sufficiently prejudicial to warrant a mistrial. *State v. Nienhardt*, 196 Wis. 2d 161, 166, 537 N.W.2d 123 (Ct. App. 1995).  A mistrial is appropriate only when a "manifest necessity" exists for the

termination of the trial. *State v. Bunch*, 191 Wis. 2d 501, 507, 529 N.W.2d 923 (Ct. App. 1995).

## B. Additional Background

¶67  Zocco filed a pretrial motion to exclude evidence of other acts "either prior to or following the date of the alleged offense." At a pretrial hearing, the prosecutor stated that: (1) the State's expert would discuss the items located on the external hard drive and the one CD on which the charges were based; and (2) the State would not be "introducing any other acts, as far as anything beyond the content of the actual … items that contain the child pornography evidence in this case."

¶68  In her opening statement, the prosecutor told the jury that it would hear that detectives found child pornography on five of the thirty-nine discs taken from Zocco's apartment. As she began describing the discs' content, defense counsel objected because the State had not filed an "other acts motion." The prosecutor responded that the information pertained to the evidence collected in the case, was part of the overall discovery in the case "from the beginning," was referenced in the police reports, was found on the same date and was the basis for the subsequent search warrant for inspecting the external hard drive, and was "required for a complete and accurate picture of how the evidence was uncovered [and] what steps led to the next step" in the investigation. The circuit court determined that the uncharged child pornography evidence was relevant as to the knowing possession element of the charges and advised the prosecutor to delineate "exactly which items are in the 17 counts that are being charged," to avoid the jury using the evidence of the uncharged child pornography to find Zocco guilty of the charges.

¶69    Zocco moved for a mistrial based on the State's reference in its opening statement to other acts without having provided notice. The circuit court denied the motion, ruling that the State was referring not to other acts evidence but to "items that were in the exact context" and "in the nature of the same events."

¶70    During trial, one detective testified that he found child pornography recordings on five of the thirty-nine CDs that were seized from Zocco's apartment; another detective testified that the four uncharged CDs contained child pornography, all but one CD showing a girl performing oral sex with an adult male; and in closing argument the prosecutor referenced the child pornography found on the five CDs and told the jury that it should consider only the fifth CD, the one containing the images that were the basis for one of the charges.

¶71    In his postconviction motion, Zocco argued that the circuit court erroneously admitted other acts evidence and denied his mistrial motion. The postconviction court rejected Zocco's argument, ruling that the circuit court had not erroneously exercised its discretion because the uncharged child pornography was "inextricably intertwined with the evidence … that formed the basis of the charged counts." *See Dukes*, 303 Wis. 2d 208, ¶28.

### C. Analysis

¶72    We conclude that the circuit court properly admitted the evidence and denied the mistrial motion because the evidence was not improper. This evidence is not other acts evidence. Other acts evidence refers to "instances of a person's ... conduct ... not the subject of [the case being litigated]." RONALD J. ALLEN ET AL., EVIDENCE: TEXT, PROBLEMS, AND CASES 236 (5th ed. 2011). Here, the evidence Zocco points to—recordings of child pornography found on four CDs taken from Zocco's apartment—is circumstantial evidence (without an

impermissible propensity inference) that was part of a chain of facts by which the jury could infer that Zocco knowingly possessed the child pornography found on the external hard drive and a fifth CD taken from his apartment on the same date. *See State v. Wedgeworth*, 100 Wis. 2d 514, 531-33, 302 N.W.2d 810 (1981) ("evidence relating to the weapons found in the defendant's residence [was] part of a chain of facts by which the state sought to have the jury infer that the defendant possessed heroin with the intent to deliver" where the quantity of heroin seized was "insufficient in itself to prove intent to deliver").

¶73 Thus, the evidence of the uncharged child pornography recordings found on the four CDs taken on the same date as the external hard drive and fifth CD was both inextricably intertwined with the evidence regarding the charged child pornography recordings on the external hard drive and fifth CD and was also necessary to complete the story of the crime on trial. *See Dukes*, 303 Wis. 2d 208, ¶28 (evidence that is "needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime" is relevant and is not other acts evidence). The jury could have reasonably found that this evidence tended to make Zocco's knowing possession of the charged child pornography recordings more probable than it would have been without the evidence, and it was therefore relevant to establishing his guilt. *See* WIS. STAT. § 904.01.

¶74 As we understand Zocco's briefing, he makes two arguments to the contrary. First, Zocco argues that the evidence of the uncharged child pornography recordings found on the four CDs is evidence of different acts from the charged child pornography recordings found on the external hard drive and the fifth CD because possession of each recording may be charged as a separate offense. *See State v. Multaler*, 2002 WI 35, ¶¶64-67, 252 Wis. 2d 54, 643 N.W.2d 437 (holding that individual images of child pornography on one storage

device may be separately charged). However, Zocco does not explain why the fact that possession of each recording may be separately charged necessarily means that the evidence of the uncharged recordings cannot be circumstantial evidence of Zocco's knowing possession of the charged recordings. As the circuit court stated, "If the State finds … multiple items of contraband, they don't have to charge somebody with every item of contraband" or risk being unable to present the items not charged as evidence of knowledge and lack of mistake. Zocco presents no legal authority to the contrary.

¶75    Zocco also argues that the State "whipsawed" him by "breach[ing]" its pretrial assurance that it would not rely on other acts evidence. However, Zocco's argument fails in light of our conclusion that the evidence of the uncharged child pornography recordings is not other acts evidence. Moreover, the State's expert discussed only the material found on the external hard drive and CD as charged, and the other State witnesses testified only as to the items containing child pornography, both consistent with the State's "pretrial assurance."

¶76    In sum, Zocco fails to show that the circuit court erroneously admitted the evidence of the uncharged child pornography recordings and denied his mistrial motion.

## V. New Trial in the Interest of Justice

¶77    Zocco argues that he is entitled to a new trial because the admission of the other acts evidence and the absence of the supplemental jury instruction prevented the real controversy from being fully tried, and because justice miscarried in light of the absence of that jury instruction and the insufficiency of the State's evidence. For the reasons stated above, we have rejected Zocco's assertions as to the other acts evidence, the jury instruction, and the sufficiency of

the evidence, and we therefore decline to exercise our discretionary authority to grant Zocco a new trial in the interest of justice. *See **State v. Echols***, 152 Wis. 2d 725, 745, 449 N.W.2d 320 (Ct. App 1989) (basing a request for a new trial "with arguments that have already been rejected adds nothing").

## *VI. Exercise of Discretion in Imposing Sentence*

¶78    Zocco argues that the circuit court erroneously based its sentence on two facts: (1) Zocco's status as a "consumer" of child pornography, and (2) the aggravated nature of the child pornography recordings found in his possession. More specifically, Zocco appears to argue both that the former is inaccurate and that the latter is irrelevant because there was no evidence that he had accessed or seen the recordings on the external hard drive. Zocco's argument does not survive the applicable standard of review.

¶79    Sentencing falls within the discretion of the sentencing court. ***McCleary v. State***, 49 Wis. 2d 263, 275, 182 N.W.2d 512 (1971); ***State v. Gallion***, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. "Discretion contemplates a process of reasoning based on the facts of record and reasonable inferences from those facts and a conclusion supported by a logical rationale founded upon proper legal standards." ***State v. Klubertanz***, 2006 WI App 71, ¶16, 291 Wis. 2d 751, 713 N.W.2d 116 (citing ***McCleary***, 49 Wis. 2d at 277).

¶80    The principal objectives of a sentence include protecting the community, punishing the defendant, rehabilitating the defendant, and deterring others from committing crimes. ***Gallion***, 270 Wis. 2d 535, ¶40. In determining the sentencing objectives, the sentencing court must consider certain factors, including the gravity of the offense, the character of the defendant, and the need to protect the public. ***Harris v. State***, 75 Wis. 2d 513, 519, 250 N.W.2d 7 (1977)

31

(citing *McCleary*, 49 Wis. 2d at 274-76). The weight assigned to each factor is left to the court's discretion. *Harris*, 75 Wis. 2d at 520. "When the circuit court has exercised its discretion, we follow a consistent and strong policy against interference with the discretion of the [sentencing] court, and we afford 'a strong presumption of reasonability' to the court's sentencing determination because the [sentencing] court is best suited to consider the relevant factors and demeanor of the convicted defendant." *Klubertanz*, 291 Wis. 2d 751, ¶20 (citing *Gallion*, 270 Wis. 2d 535, ¶18).

¶81    As for Zocco's objection to the circuit court's considering him to be consumer of child pornography, Zocco does not explain why it was necessary for the State to have proved that he viewed the recordings on his external hard drive in order for the court to consider him to be a consumer of the recordings found there. The court reasonably stated that, while Zocco may not have been involved in producing the child pornography recordings on his external hard drive, Zocco was "providing an audience or consumer for" the child pornography recordings in his possession simply by knowingly possessing them. Zocco's own description of himself as a "passive possessor" is not inconsistent with the court's contrasting the active role of a producer with that of a consumer. The court explained why even "passive possession," in Zocco's words, is a serious offense, and pointed to the legislature's requiring a minimum of three years' initial confinement for the offense as an indication of its gravity.

¶82    As for Zocco's objection to the circuit court's consideration of the "aggravated" contents of the recordings, the court noted that many of the recordings showed "actual sexual assaults of children," involving "physical activity that had to be absolutely painful for the children," many of whom were very young, including toddlers. Where that "aggravated" nature of the contents

could be reasonably inferred from the titles of the recordings, and where, as the State's expert testified, those titles were readily visible on the external hard drive, Zocco fails to explain why the nature of the contents was not relevant to the gravity of his knowing possession of those recordings, even in the absence of evidence that he had viewed them on the external hard drive.

¶83    We understand the essence of Zocco's argument to be that the circuit court should have given less weight to the fact of Zocco's possession and to the contents of the recordings because there was no evidence that Zocco viewed the recordings on the external hard drive.  However, such weighing is for the circuit court, not this court.  *See Harris*, 75 Wis. 2d at 520.  The court acknowledged that it had been several years since the recordings had been viewed or shared but balanced that fact against such factors as the need to discourage the accumulation of increasing amounts of child pornography, the "excruciating" nature and length of sexual assaults shown on the recordings (from eleven seconds to over thirty-three minutes), a statement from one of the victims in the recordings describing the adverse effects of her victimization, and Zocco's lack of remorse or responsibility.  As a result of that balancing, the court concluded that there needed to be ample time for punishment for the "very serious possession [of] very serious child pornography," for rehabilitation, and for protection of the public.  Zocco fails to show that the court erred in considering the facts and reasonable inferences from the evidence at trial, in order to make a reasoned decision that a reasonable judge could make.

*VII. Validity of the Extended Supervision Condition*

¶58    Zocco challenges the validity of the extended supervision condition "that you [Zocco] not be involved in any conduct that rises to the level of a finding of probable cause that you have violated the criminal law."

¶59    Circuit courts have "broad discretion" to impose conditions of extended supervision "as long as the conditions are reasonable and appropriate." *State v. Koenig*, 2003 WI App 12, ¶7, 259 Wis. 2d 833, 656 N.W.2d 499.  A condition may not conflict with other statutory provisions.  *State v. Hoppe*, 2014 WI App 51, ¶8, 354 Wis. 2d 219, 847 N.W.2d 869.  A condition is not unconstitutionally vague if it provides "fair and adequate notice" of the conduct required.  *Koenig*, 259 Wis. 2d 833, ¶¶9, 14.

¶60    Zocco argues that:  (1) the condition is unreasonable because it conflicts with the preponderance of the evidence burden to prove a violation of a condition of supervision; and (2) the condition is unconstitutionally vague because it requires that Zocco not engage in behavior that others might deem as probable cause of illegality.  We reject both arguments as follows.

¶61    First, Zocco fails to explain how the standard for the Department of Corrections to prove a violation to revoke supervision (preponderance of the evidence) is relevant to the standard for him to avoid probable cause of committing a violation.  That is, he does not explain why there is a conflict between holding the Department to one standard of proof to revoke supervision, and holding him to a different standard in conducting himself while on supervision.

34

¶62 Second, Zocco concedes that the definition of probable cause is not vague. Rather, he argues that the condition depends on the "notions of others" as to what constitutes probable cause of a crime. However, Zocco does not develop this argument in terms of his constitutional challenge. Accordingly, we do not further consider his challenge based on vagueness. *See **Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc.***, 2004 WI App 134, ¶16, 275 Wis. 2d 349, 685 N.W.2d 564 (ordinarily we will not address undeveloped arguments).

## CONCLUSION

¶63 For the reasons stated, we reject Zocco's appellate arguments and affirm.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18)