STATE of Wisconsin,
Plaintiff-Respondent,

v.

Albert J. CHAGNON,
Defendant-Appellant.

Court of Appeals

*No. 2014AP2770–CR. Submitted on briefs June 12, 2015.
—Decided July 30, 2015.*

2015 WI App 66

(Also reported in 870 N.W.2d 27.)

720

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Colleen Marion*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gregory M. Weber*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Lundsten, Higginbotham and Sherman, JJ.

¶ 1. SHERMAN, J. Albert J. Chagnon, a sex offender within the meaning of WIS. STAT. § 948.14 (2013–14),[1] appeals from an order of the circuit court denying his motion to dismiss twenty-three counts charging him, under § 948.14, with capturing images of minors without consent.[2] Whether the § 948.14 charges against Chagnon should be dismissed hinges on the proper interpretation of the term "captures a representation." This term, used in § 948.14, is defined

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] By order dated January 7, 2015, we granted Chagnon's petition for leave to appeal.

in a different criminal statute, WIS. STAT. § 942.09, dealing with a related prohibition. For the reasons that follow, we conclude that the definition of "captures a representation" found in § 942.09 does not cover the conduct alleged in the complaint and, therefore, reverse the circuit court's order denying dismissal of the twenty-three counts.

## BACKGROUND

¶ 2. Chagnon, a registered sex offender, was charged with twenty-three counts of intentionally photographing a minor without consent, as a repeater, contrary to WIS. STAT. § 948.14(2)(a).[3] The complaint alleged that Chagnon was an inmate at the Oshkosh Correctional Institute and was about to be discharged. During a routine pre-discharge inventory of Chagnon's property, a correctional officer discovered "a small red notebook in the back pocket of a pair of [Chagnon's] pants" containing 189 photographs of fully-clothed young girls whose ages ranged from apparent infancy to ten years of age. The photographs had been cut from magazines or newspapers and pasted into the notebook. For the most part, the photographs were so closely cropped that other imagery in the original photos was removed and all that was left was the

---

[3] WISCONSIN STAT. § 948.14(2)(a) provides:

> A sex offender may not intentionally capture a representation of any minor without the written consent of the minor's parent, legal custodian, or guardian. The written consent required under this paragraph shall state that the person seeking the consent is required to register as a sex offender with the department of corrections.

Chagnon was also charged with four counts of violating state/county institution laws, as a repeater. Those charges are not affected by this appeal and remain pending in the circuit court.

portion of the original depicting one or more girls. There was handwriting, sometimes on the photographs, sometimes next to the photographs, and sometimes both. The written comments used sexually graphic language and often described the girls' desire or request to have sexual intercourse with an adult. Some of the handwriting provided the names of the girls in the photos.

¶ 3. A police officer made contact with the parents of twenty-three of the girls and determined that none had given Chagnon consent to, in the words of the criminal complaint, "capture a representation or possess a photograph of their children." There was considerable additional information in the factual basis of the complaint that pertained to Chagnon's sexual interest in children.

¶ 4. Chagnon filed a motion to dismiss the twenty-three counts charging him with violations of WIS. STAT. § 948.14(2)(a) on the grounds that the complaint failed to provide a sufficient factual basis to support those charges. The basis of Chagnon's motion was that an essential element of the crime required the State to allege that Chagnon "capture[d] a representation of any minor." Sec. 948.14(2)(a). Chagnon pointed out that "[c]aptures a representation" is statutorily defined in WIS. STAT. § 942.09(1)(a) as: "takes a photograph, makes a motion picture, videotape, or other visual representation, or records or stores in any medium data that represents a visual image," and Chagnon argued that the complaint did not allege that he had done anything covered by that definition.[4]

---

[4] Before the circuit court, Chagnon argued in the alternative that, even if the "stores in any medium data" language covers the *mere possession* of a visual image, he did not possess or store *data* as that term is used in WIS. STAT. § 942.09(1)(a).

¶ 5. In response, the State argued that Chagnon had conceded that possession of a representation stored as data was prohibited by the statute and that the common sense meaning of "data" was not limited to digital data, but included a broader meaning, "facts or [] information," which encompassed the collection of photographs cut from magazines and newspapers. Alternatively, the State argued that Chagnon made a "visual representation" within the meaning of WIS. STAT. § 942.09(1)(a) by effectively creating new sexualized images of the children.

¶ 6. The circuit court denied the motion to dismiss, determining that "the possession of photographs reproduced in [publications] and possessed by the Defendant, fall within the prohibition contemplated by" the statute. Chagnon sought leave to appeal and we granted that petition.

## DISCUSSION

¶ 7. Chagnon contends the circuit court erred in determining that the facts alleged in the compliant were sufficient to show a violation of WIS. STAT. § 948.14(2)(a). The sufficiency of a criminal complaint is a matter of law which we address de novo. *State v. Adams*, 152 Wis. 2d 68, 74, 447 N.W.2d 90 (Ct. App. 1989). A complaint, to be sufficient, must set forth facts within its four corners that, together with reasonable inferences from those facts, would allow a reasonable

Chagnon does not rely on this essentially overlapping but alternative argument on appeal and we do not address it separately. In any event, our conclusion that the term "stores" in § 942.09(1)(a) does not refer to mere storage or possession means that we would reject any contrary argument by the State.

person to conclude that a crime had been committed and that the defendant was probably the person who committed it. *Id.* at 73. We evaluate a complaint in a common sense, rather than a hypertechnical manner. *Id.*

¶ 8.   In order to determine the sufficiency of the complaint here, we must interpret the meaning of the phrase "captures a representation" in Wɪs. Sᴛᴀᴛ. § 948.14, a term that is defined in Wɪs. Sᴛᴀᴛ. § 942.09(1)(a). Thus, boiled down, we must interpret § 942.09(1)(a) as it applies to undisputed facts. This is a question of law subject to de novo review. *See State v. Cole*, 2000 WI App 52, ¶ 3, 233 Wis. 2d 577, 608 N.W.2d 432.

¶ 9.   "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). We give statutory language its common, ordinary, and accepted meaning. *Id.* "Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . ." *Id.*, ¶ 46.

¶ 10.   Pertinent here, a plain meaning analysis sometimes includes reference to prior versions of a statute. Courts refer to this as looking at *statutory history. See Beaver Dam Cmty. Hosps., Inc. v. City of*

*Beaver Dam*, 2012 WI App 102, ¶ 8, 344 Wis. 2d 278, 822 N.W.2d 491 ("Statutory history, which involves comparison of the statute with its prior versions, is also a part of plain language analysis."). In contrast, courts generally refrain from looking at *legislative history* unless and until statutory language is deemed ambiguous. In that event, legislative history may be used to help resolve ambiguity.[5] *See Kalal*, 271 Wis. 3d 633, ¶¶ 47, 50. At the same time, if a court concludes that statutory language is unambiguous, "legislative history is sometimes consulted to confirm or verify plain-meaning interpretation." *See id.*, ¶ 51.

■

¶ 11.   Applying these principles, we agree with Chagnon that the allegations of the complaint do not satisfy the statutory requirement that Chagnon "capture[d] a representation" of any of the girls. No doubt Chagnon's behavior in creating and maintaining his notebook, with its sexual captions and commentary about the very young girls depicted, is disturbing to say the least. And, it might be that the legislature *could* prohibit a person in Chagnon's status from creating or possessing such a notebook. However, the question here is whether the legislature *did* cover Chagnon's conduct when it enacted WIS. STAT. § 948.14(2)(a). As we now explain, the legislature did

---

[5] "'A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses.' Whenever a case such as this one is before the court, however, it is obvious that people disagree as to the meaning to be given to a statute. This alone cannot be controlling. The court should look to the language of the statute itself to determine if 'well-informed persons' should have become confused." *Bruno v. Milwaukee Cty.*, 2003 WI 28, ¶ 19, 260 Wis. 2d 633, 660 N.W.2d 656 (quoted source and internal citations omitted).

not. We urge the legislature to re-examine this statute to ascertain whether or not it accomplished what it intends. The role of a court in Wisconsin is to determine the meaning of a statute as it is written. *See Kalal*, 271 Wis. 2d 633, ¶ 43.

¶ 12. We begin, as *Kalal* directs, with the language of the statute. As noted, the language at issue is not in Wis. Stat. § 948.14(2)(a), the statute under which Chagnon was charged. Rather, we must construe language found in a different statute, Wis. Stat. § 942.09(1)(a). That is, the parties nominally dispute the meaning of "captures a representation" found in § 948.14. But the real dispute is over the meaning of the words the legislature chose to define "captures a representation," and those words are found in § 942.09(1)(a). We therefore direct our attention to this definitional language.

¶ 13. Wisconsin Stat. § 942.09(1)(a) provides: " '[c]aptures a representation' means takes a photograph, makes a motion picture, videotape, or other visual representation, or records or stores in any medium data that represents a visual image." The parties dispute two parts of this definition. First, they dispute whether Chagnon's conduct in creating the notebook amounts to him "mak[ing] . . . [a] visual representation." Second, they dispute whether Chagnon's conduct of storing the images in the notebook constitutes "stor[ing] in any medium data that represents a visual image." We address each in turn.

*A. Whether Chagnon Made
Visual Representations of Children*

¶ 14. The State argues that Chagnon made visual representations of the girls by cutting their im-

ages out of larger photographs, thereby removing them from their original context, and then isolating each cropped image on a page in the small notebook and adding a "new visual component to them—his graphic sexual comments." According to the State, like artists that use existing images to create photomontages, Chagnon created new images. That is, he created new visual representations of the girls. We disagree.

¶ 15. We first observe that the language in the definition is clearly directed toward the visual image of a person. Putting aside the "stores" language we address next, in defining "captures a representation" the legislature says the following: "takes a photograph, makes a motion picture, videotape or other visual representation, or records . . . data that represents a visual image." *Id.* The plain meaning of this language is that it refers to a visual representation of a person. It does not address the context in which that image appears.

¶ 16. This leads us to our conclusion that Chagnon did not make visual representations of the girls. The photographic images are those Chagnon found in publications. Putting existing images into a sexual context is not the same as making the images. We agree that Chagnon created something new and that Chagnon misused the photographs. But Chagnon did not, under any common definition of the term, "make" new visual representation of the girls.

¶ 17. The argument's lack of merit is perhaps better understood using a different example. Suppose a politician pays for the production of signs with her photograph on it. Suppose further that an opponent acquires a sign, crops the photograph of the politician from it, and creates new signs with a negative reference to the politician. In this scenario, a new sign has

been created, but the image of the politician is the same. The part of the sign that is the image of the politician remains the same.

¶ 18. In sum, the State fails to persuade us that Chagnon made "visual representation[s]" of the girls.

*B. Whether Chagnon's Conduct of Storing the Images in the Notebook Constitutes "Stor[ing] . . . Data that Represents a Visual Image"*

¶ 19. The definition at issue here bears repeating. "Captures a representation" means:

> takes a photograph, makes a motion picture, videotape, or other visual representation, or records or stores in any medium data that represents a visual image.

*Id.* In general, the parties dispute whether this definition is limited to the creation of images or, because of the "stores" language, extends to merely storing or possessing such images.[6]

¶ 20. More specifically, Chagnon argues that all of the acts specified in the definition involve the creation of images and that the "stores [data] in any medium" part of the definition must, therefore, be

_____

[6] In this opinion we do not differentiate between storing and possessing. We do not understand either party to base an argument on the difference between these two terms. We stress, however, that under different facts the difference between storing and possessing may matter. For that matter, we do not differentiate between "image" and "visual representation." If there is a difference between the meaning of these two terms that matters, the parties have not brought that difference to our attention.

interpreted under the doctrine of *ejusdem generis*[7] as referring to the creation of images by the use of digital recording. According to Chagnon, the "stores . . . data" phrase was added specifically to keep up with changing technology that allows persons to make digital images through a process of recording and storing digital data.

¶ 21.  The State argues that the phrase "[data] in any medium" is not limited to digital data. The State points to dictionary definitions of individual words in the definition and urges us to adopt a much broader meaning. In particular, the State points to dictionary definitions that define "store" as "keep or accumulate for future use" and "data" as "information." Thus, under the State's view, clipping photographs and pasting them onto pages in a notebook is "stor[ing] . . . data that represents a visual image" because such pages are kept for future viewing and because the clipped hard copy photograph on the page is information.

¶ 22.  If the statutory definition was "capable of being understood by reasonably well-informed persons" in the way the State argues, that language would be ambiguous. *Bruno v. Milwaukee Cty.*, 2003 WI 28, ¶ 19, 260 Wis. 2d 633, 660 N.W.2d 656. We are not persuaded that the State's interpretation is reasonable.[8]

---

[7] We explained in *West Capitol, Inc. v. Village of Sister Bay*, 2014 WI App 52, ¶ 28, 354 Wis. 2d 130, 848 N.W.2d 875, that *"[e]jusdem generis* is Latin for 'of the same kind or class[.]' BLACK'S LAW DICTIONARY 556 (8th ed. 2004). It refers to the rule of construction that 'when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed.' " (Emphasis added.)

[8] The State's argument isolates individual words and focuses on the dictionary meaning of each word. This ignores the

¶ 23. To recap, under the State's view, the word "stores" is a reference to mere storage, regardless how an image was created, and "data" refers to all information and, thus, includes all images—digital, hardcopy, or otherwise. Thus, under the State's analysis, "capture a representation" includes an activity distinct from making a representation, namely, storing a representation that has previously been made. And, although the State repeatedly emphasizes the sexual nature of Chagnon's notebook as a factual matter, the State's analysis of the statutory language does not assert that language in the statute speaks to this topic.

¶ 24. The problem with this broad interpretation is that it has no apparent limit. So far as we can tell, under the State's reading of the "stores" language, the storage of any magazines or newspapers that happen to contain photographs of children is prohibited when the person storing those publications is a sex offender. This means that Chagnon would have violated WIS. STAT. § 948.14(2)(a) if he had done nothing more with the publications he received than stack them in his room. There is nothing in the State's explanation of the "stores . . . data" language that requires proof that Chagnon actually did anything with the original images except store them in some manner.[9]

¶ 25. Accordingly, we reject the State's interpretation of the "stores . . . data" language as unreason-

supreme court's direction that "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole." *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110.

[9] Neither party devotes much attention to "consent" under WIS. STAT. § 948.14(2)(a). Chagnon argues that it may be that consent exists because parents presumably consent to having the images of their children in publications. We need not and do not address the issue of consent.

able and turn to Chagnon's argument that this language is instead the legislature's effort to include capturing images electronically. In this regard, we look at the context in which the definitional language appears, that is, a statute addressing a related but different problem, namely, the nonconsensual photographing or recording of nude persons and the retention and distribution of such images.

¶ 26. In general terms, WIS. STAT. § 942.09 protects an individual's bodily privacy by prohibiting a number of actions involving depictions of nudity without the individual's consent. Significantly, § 942.09 has separate subdivisions for "captur[ing] a representation" of someone in the nude without their consent, reproducing such representations, and "possess[ing], distribut[ing], or exhibit[ing]" such representations. *See* § 942.09(2)(am)1.-3.[10] Significant for our purposes is the fact that § 942.09(2)(am) makes it a crime under subdivision 1. to "capture[] a representation" and a separate crime under subdivision 3. to "possess[]" a representation captured in violation of subdivision 1. This is significant because if the definition of "capture

---

[10] WISCONSIN STAT. § 942.09(2)(am)1. provides:

> Captures a representation that depicts nudity without the knowledge and consent of the person who is depicted nude while that person is nude in a circumstance in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted nude does not know of and consent to the capture of the representation.

WISCONSIN STAT. § 942.09(2)(am)2. states: "Makes a reproduction of a representation that the person knows or has reason to know was captured in violation of subd. 1. . . . ."

WISCONSIN STAT. § 942.09(2)(am)3. states: "Possesses, distributes, or exhibits a representation that was captured in violation of subd. 1. or a reproduction made in violation of subd. 2. . . . ."

734

a representation" includes possessing a representation, then the part of subdivision 3. prohibiting possession is rendered surplusage.

¶ 27. It is a basic rule of statutory construction that effect is to be given to every word of a statute if possible, so that no portion of the statute is rendered superfluous. *See Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997). Consequently, the creation by the legislature of a separate subdivision for "possession" of a captured image and for "capturing" such an image indicates that the definition of capturing an image does not include its mere possession. Otherwise, the subdivision of the statute prohibiting possession would be superfluous. Because WIS. STAT. § 948.14 uses the same definition, the fact that § 948.14 does not contain a subsection or subdivision prohibiting possession does not lead to a contrary conclusion. Rather, it simply emphasizes that mere possession of an image is not prohibited by § 948.14.

¶ 28. As we have seen, the State argues that "store[]" merely means to "keep or accumulate." However, if what is being kept or accumulated is digital data resulting from the use of a digital camera or video recorder, then the "stores" language in the definition fits our view that the entire definition of "capture[] a representation" is directed at making, not possessing. The collection and storage of digital data is an inherent part of the process of producing a digital image, analogous to taking a photograph or motion picture. On the other hand, if storage of data means any possession of information in any form, as the State argues, then it is indistinguishable from possession of that information, and thus the possession part of subdivision 3. in WIS. STAT. § 942.09(2)(am) is surplusage—an interpretation

735

that would not occur to our hypothetical reasonably informed person. We conclude, therefore, that the phrase "stores in any medium data that represents a visual image" in § 942.09(1)(a) refers to the creation of images by digital means.

¶ 29. Statutory history of WIS. STAT. § 942.09 supports our interpretation.[11] 1995 Wisconsin Act 249 created WIS. STAT. § 944.205, the predecessor to § 942.09, which prohibited "[t]ak[ing] a photograph or mak[ing] a motion picture, videotape or other visual representation or reproduction that depicts nudity without the knowledge and consent of the person who is depicted nude . . . ." Section 944.205 separately prohibited "possess[ion] or distribut[ion]" of such a depiction. Notably, there is no mention of "capturing an image" or the storage of data in the statute. In 2000, the Wisconsin Supreme Court found § 944.205 unconstitutional on the grounds of overbreadth. *See State v. Stevenson,* 2000 WI 71, ¶ 41, 236 Wis. 2d 86, 613 N.W.2d 90.

¶ 30. In the following legislative session, 2001 Wis. Act 16, the State budget bill, the legislature reenacted WIS. STAT. § 944.205 with added language

---

[11] Our supreme court has explained that a review of statutory history is part of a court's plain meaning interpretation of a statute. *See Richards v. Badger Mut. Ins.. Co.,* 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581. The court stated in *Richard*:

> A review of statutory history is part of a plain meaning analysis. Statutory history encompasses the previously enacted and repealed provisions of a statute. By analyzing the changes the legislature has made over the course of several years, we may be assisted in arriving at the meaning of a statute. Therefore, statutory history is part of the context in which we interpret the words used in a statute. (Internal citations omitted.)

*Id.*

designed to limit the scope of the prohibition and avoid the constitutional issue. Significantly, the operative language "takes a picture or makes a motion picture, videotape or other visual representation" was replaced with "records an image of" nudity. Nonetheless, Act 16 includes a separate subsection prohibiting possession of such an image. In the same session of the legislature, § 944.205 was repealed and replaced with WIS. STAT. § 942.09 in essentially the same language currently before us, including the definition of "captures a representation" and separate subdivisions for capturing an image and possessing an image. *See* 2001 Wis. Act 33.

¶ 31. All of the different forms that WIS. STAT. § 942.09 has taken since 1995, despite changes in the definition of creation of the image, have included separate subdivisions for creating an image and for possessing it. It seems clear that, whatever definition is employed by the legislature, possession of an image is considered separate from capturing an image.

¶ 32. As we have noted in ¶ 10 above, even in the absence of ambiguity, extrinsic evidence from the legislative history may be used to confirm the plain language meaning of a statute. In this case, the legislative history confirms the construction we have arrived at above.

¶ 33. An analysis by the Legislative Reference Bureau to 2005 Assembly Bill 251, which is the source of WIS. STAT. § 948.14, the prohibition on capturing images of minors under which Chagnon was charged, states:

> This bill prohibits persons who are required to register as sex offenders from intentionally photographing, filming, or videotaping any person under the

age of 17 unless the parent, custodian, or guardian of the person under the age of 17 provides written consent.

2005 Assembly Bill 251, Analysis by the Legislative Reference Bureau (LRB-1537/1.) It is clear from this analysis that the bill was intended to prohibit the creation of images, not their mere possession.

■ ■

¶ 34. In sum, the structure of WIS. STAT. § 942.09, with its separate subdivisions for capturing a representation and possessing such a representation, and the legislature's decision to import the definition of "captures a representation" from § 942.09 into WIS. STAT. § 948.14, along with legislative history indicating that the purpose of § 948.14 is to prohibit sex offenders from photographing, filming, or videotaping minors without parental consent, leads to the conclusion that "stores in any medium data that represents a visual image" does not include the mere possession of visual images.[12]

## CONCLUSION

¶ 35. For all of the reasons outlined above, we conclude that the twenty-three counts at issue here do not state a sufficient factual basis within the four corners of the complaint to permit a reasonable person to conclude that Chagnon has committed the crimes

---

[12] This is confirmed by a memo from the Legislative Council, the legislature's legal advisor, that "storage of data representing an image" is intended to bring within the scope of the definition "computer programs and stored digital images." *See* Wisconsin Legislative Council Amendment Memo, 2001 Assembly Bill 60/Senate Substitute Amendment 2 (October 15, 2001) (2001 Assembly Bill 60 is the bill which created WIS. STAT. § 942.09(1)(a)).

charged in those counts. Specifically, we conclude that "captures a representation," as that term is statutorily defined, cannot reasonably be construed to apply to cutting pictures from magazines and newspapers and pasting them into a notebook. Accordingly, we reverse the order of the circuit court denying Chagnon's motion to dismiss.

*By the Court.*—Order reversed and cause remanded.