COURT OF APPEALS
DECISION
DATED AND FILED

September 9, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1124-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CM1054**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

KAYLA C. MURPHY,

   DEFENDANT-RESPONDENT.

        APPEAL from an order of the circuit court for Brown County: JOHN ZAKOWSKI, Judge. *Reversed and cause remanded for further proceedings*.

        ¶1      STARK, P.J.[1]   The State appeals an order granting Kayla Murphy's motion to dismiss an amended criminal complaint charging her with one count of neglecting a patient, contrary to WIS. STAT. § 940.295(3)(a)3. and (b)4.  The State argues that the circuit court erred by dismissing the amended complaint because it

---

        [1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

alleged sufficient facts, together with reasonable inferences from those facts, to allow a reasonable person to conclude that Murphy neglected a patient under circumstances that caused or were likely to cause that patient bodily harm in violation of that statute. We agree. Accordingly, we reverse the circuit court's order granting Murphy's motion to dismiss and remand the matter for further proceedings.

## BACKGROUND

¶2 The amended complaint alleged the following facts. On July 26, 2018, at approximately 5:25 p.m., Ashwaubenon Department of Public Safety officer Mackenzie Teske was dispatched to the home of Cathy Stevens in response to Stevens' report that her adult nephew Luke[2] was missing. Stevens expected Luke to be bused to her home at approximately 4:00 p.m. from a day program provided by Paragon Community Services ("Paragon"). She reported that Luke has Down Syndrome and has the mental capacity of a three-year-old child. She further explained that Luke "can talk but only will repeat simple words." Stevens had called Paragon in an attempt to learn if Luke's bus was delayed or if any other issue had occurred, but she was unsuccessful; her calls either went to voicemail or were not answered.

¶3 Officer Teske went to Paragon and found Luke sitting in the second row of a locked, empty bus. Teske was eventually able to obtain access to the bus, the inside of which he reported was "warm." Teske observed Luke was "sweating and flushed" when he made contact with Luke, but he reported Luke was otherwise "okay." At Teske's request, dispatch informed him that the outdoor temperature at

---

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym instead of the victim's name.

6:30 p.m. was approximately 73 degrees Fahrenheit.  Investigator Diana Lawler later filed a report indicating that she "utilized AVMA to attempt to determine the temperature inside the bus at the time."[3]  According to the "AVMA" test, Lawler reported the temperature inside the bus at 6:30 p.m. would have been approximately 118 degrees Fahrenheit.

¶4      Officer Teske learned from Paragon's manager that Murphy drove the bus in which Luke was found.  He also learned Murphy had been working at Paragon for almost one year and "never had any issues."

¶5      Officer Teske met with Murphy the following day, and he reported that Murphy was emotional, apologetic, and started to cry on learning that Luke was left on the bus after she completed her route.  Murphy stated that nothing out of the ordinary happened on July 26, and she did not know why she forgot to drop Luke off at Stevens' house.  Although Murphy drove a different bus than usual on July 26, she stated that she drove her normal bus route with the same clients that day. Murphy did not remember being distracted by anything within the bus.  Murphy explained that she returned to Paragon's parking lot at 4:15 p.m.  She told Teske that she did a visual inspection of the bus through the rearview mirror, but she nevertheless must have missed Luke.

¶6      Murphy moved to dismiss the amended complaint, arguing that her conduct "constitute[d], at worst inadvertence or ordinary negligence," and, thus, the amended complaint failed to allege facts necessary to meet an essential element of

---

[3] The record is unclear as to what "AVMA" stands for and what the test entails.  Further, Lawler's report is not in the appellate record.

WIS. STAT. § 940.295(3)(a)3. A circuit court commissioner denied Murphy's motion after a hearing.

¶7 A few months later, Murphy again moved to dismiss the amended complaint, asserting that it failed to allege sufficient facts supporting her charged crime. Specifically, she argued that the amended complaint failed to allege sufficient facts showing she "neglected" Luke or, in the alternative, it failed to allege sufficient facts that her conduct created a "significant risk or danger" to Luke's physical or mental health.

¶8 After a hearing, the circuit court entered a written decision granting Murphy's motion to dismiss. The court first determined that the amended complaint alleged sufficient facts to conclude that Murphy's conduct created a significant risk of danger to Luke's physical or mental health. The court concluded, however, that the amended complaint failed to allege sufficient facts showing Murphy "neglected" Luke as required to find criminal liability under the statute. Relying on multiple jury instructions and the language in WIS. STAT. § 940.295(3)(am), the court determined that Murphy's conduct constituted ordinary negligence and not "the sort of criminal negligence" contemplated under § 940.295(3)(a). Thus, the court concluded the State failed to allege sufficient facts to constitute the crime charged.

¶9 The circuit court later denied the State's motion to reconsider the order dismissing the amended complaint. The State now appeals.

**DISCUSSION**

¶10 The State argues the circuit court erred by determining that the facts alleged in the amended complaint were insufficient to conclude that Murphy violated WIS. STAT. § 940.295(3)(a)3. and (b)4. The sufficiency of a criminal

complaint is a question of law that we review de novo. ***State v. Chagnon***, 2015 WI App 66, ¶7, 364 Wis. 2d 719, 870 N.W.2d 27. In addition, we must engage in statutory interpretation in order to determine the sufficiency of the amended complaint here. The interpretation of a statute is also a question of law that we review de novo. ***Id.***, ¶8.

¶11 For a complaint to be legally sufficient, it "must set forth facts within its four corners that, together with reasonable inferences from those facts, would allow a reasonable person to conclude that a crime had been committed and that the defendant was probably the person who committed it." ***Id.***, ¶7. The test is one of "minimal adequacy," and we evaluate the complaint's sufficiency using common sense, rather than in a hypertechnical manner. ***State v. Smaxwell***, 2000 WI App 112, ¶5, 235 Wis. 2d 230, 612 N.W.2d 756.

¶12 In relevant part, WIS. STAT. § 940.295(3)(a)3. establishes criminal liability for "[a]ny person in charge of or employed in any facility under sub. (2) who … abuses, with negligence, or neglects a patient or a resident." Here, the State alleged Murphy violated § 940.295(3)(a)3. by neglecting Luke. Pursuant to WIS. STAT. § 940.295(1)(k), "neglect" is defined by WIS. STAT. § 46.90(1)(f), which states that "'[n]eglect means the failure of a caregiver, as evidenced by an act, omission, or course of conduct, to endeavor to secure or maintain adequate care, services, or supervision for an individual … and creating significant risk or danger to the individual's physical or mental health."

¶13 The State charged Murphy under WIS. STAT. § 940.295(3)(b)4., which provides that "[a]ny person violating [§ 940.295(3)(a)3.] under circumstances that cause or are likely to cause bodily harm is guilty of a Class A misdemeanor." Section 940.295(3)(a)3. does not apply, however, "to a health care

provider acting in the scope of his or her practice or employment who commits an act or omission of mere inefficiency … or failure in good performance as the result of inability, incapacity, inadvertency, ordinary negligence, or good faith error in judgment or discretion." Sec. 940.295(3)(am).

¶14 For Murphy to be found guilty of violating WIS. STAT. § 940.295(3)(a)3. and (b)4., the State would have to prove the following five elements:

1. The defendant was employed in [a facility].

2. [The victim] was a patient of [the facility].

3. [The facility] was a [type of facility enumerated in § 940.295(2)].

4. The defendant neglected [the victim].

"Neglect" means creating significant risk to the physical or mental health of an individual by the failure of a caregiver to maintain adequate care, services, or supervision of that individual.[4]

5. The defendant neglected [the victim] under circumstances that were likely to cause or caused bodily harm.

---

[4] The jury instruction's definition of "neglect" differs slightly than the one provided by WIS. STAT. § 46.90(1)(f), in that the jury instruction omits "endeavor to" before the word "maintain." Note 10 of WIS JI—CRIMINAL 1272 (2019) explains: "This definition is based on the one provided in s. 46.90(1)(f), which applies because it is cross[-]referenced in [WIS. STAT.] s. 940.295(1)(k). The definition in the instruction is intended to be more understandable without substantive change." Murphy appears to imply in a footnote of her response brief that there is, in fact, a substantive difference between the two definitions.

We also question whether the jury instruction's definition of "neglect" is, in fact, substantively similar to the definition provided by WIS. STAT. § 46.90(1)(f). We decline to address this issue, however, because we rely on § 46.90(1)(f)'s definition in our analysis, Murphy's argument is undeveloped, *see* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992), and this issue's resolution is unnecessary to our disposition of the issues on appeal, *see* **Patrick Fur Farm Inc. v. United Vaccines, Inc.**, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds).

"Bodily Harm" means physical pain or injury, illness, or any impairment of physical condition.

WISCONSIN JI—CRIMINAL 1272 (2019). The parties agree that the amended complaint alleges sufficient facts concerning the first, second and third elements; their dispute involves only the fourth and fifth elements. We address each of the two disputed elements in turn.

## I. The Fourth Element: "Neglect"

¶15    We conclude that the amended complaint alleged sufficient facts to support its claim that Murphy neglected Luke as defined within WIS. STAT. § 46.90(1)(f). From the facts alleged, a reasonable person could find that by leaving Luke alone in a warm, locked bus for approximately two hours, Murphy failed to endeavor to secure adequate care, services, or supervision for Luke.

¶16    A reasonable person could further infer that Murphy's failures created a significant risk or danger to Luke's physical or mental health. According to the amended complaint, the approximate temperature inside the bus when Luke was found was 118 degrees, and he was flushed and sweating. Given Luke's personal characteristics, a reasonable person could infer that he was not likely to leave the bus on his own. It is further reasonable to infer that Luke might have been left on the bus longer had he not been found—further prolonging his exposure to high temperatures. Common sense dictates that prolonged exposure to high temperatures creates a significant risk or danger to a person. Thus, the circuit court erred in concluding that the amended complaint failed to allege sufficient facts in support of its charge that Murphy neglected Luke, as defined by WIS. STAT. § 46.90(1)(f) and in violation of WIS. STAT. § 940.295(3)(a)3.

¶17 Murphy argues the circuit court correctly concluded that the amended complaint is insufficient on the element of neglect because the alleged facts demonstrate that she did "endeavor to secure or maintain adequate care, services, or supervision" for Luke. *See* WIS. STAT. § 46.90(1)(f). She asserts that the court was correct in concluding her failure to notice that Luke remained on the bus when she checked her rearview mirror at the end of her route was ordinary negligence. Murphy maintains that her ordinary negligence was insufficient to constitute neglect under the statute because WIS. STAT. § 940.295(3)(a)3. contains a mens rea requirement. Based on this premise, she contends the amended complaint is insufficient because the facts do not demonstrate that she "knew her conduct created a likely risk of bodily harm." We reject Murphy's arguments.

¶18 First, we disagree with Murphy's argument that the plain meaning of "endeavor to" in the definition of "neglect" "clearly implies a mental state" because it "presupposes an intent to endeavor." There are two reasons for this conclusion. First, "neglect" is akin to criminal negligence where a defendant can be criminally liable regardless of his or her mental state. *See **State v. Barman***, 183 Wis. 2d 180, 203, 515 N.W.2d 493 (Ct. App. 1994) (rejecting the defendant's argument that criminal negligence requires an element of mens rea and that the defendant can only be criminally negligent if he was aware of his conduct). The critical question instead is whether the defendant breached the requisite standard of care. Here, that standard of care is defined by WIS. STAT. § 46.90(1)(f). *See* WIS. STAT. § 940.295(1)(k). If the fact finder determines Murphy breached this standard of care, then she could be found guilty of violating § 940.295(3)(a)3., regardless of whether she knew her conduct created a likely risk of bodily harm to Luke.

¶19 In addition, interpreting WIS. STAT. § 940.295(3)(a)3. to include a mental state would lead to an unreasonable interpretation of the statute. We must

8

interpret a statute "as part of a whole" and reasonably "to avoid absurd or unreasonable results." ***State ex rel. Kalal v. Circuit Court for Dane Cty.***, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110. In so doing, we give reasonable effect to every word in order to avoid surplusage, and we are not at liberty to disregard the statute's plain language. ***Id.***

¶20 Murphy's interpretation ignores the plain language of WIS. STAT. § 940.295(3)(a)1. and 2. Those subdivisions make it a crime to either "intentionally neglect[]" or "recklessly neglect[]" a patient. ***Id.*** If we were to interpret "neglects a patient" in subd. 3. as requiring a mental state, then prosecution under subd. 1. "for intentionally neglects" would duplicate a prosecution under subd. 3., or require the State to prove two mental states for the same charge. These are absurd results. *See **Kalal***, 271 Wis. 2d 633, ¶46.

¶21 Murphy seems to argue that prosecution under WIS. STAT. § 940.295(3)(a)3. must require some sort of mental state that is less than "intent" and "recklessness" such that the State would be required to prove that she knew her conduct would create a risk of bodily harm. However, she fails to identify what that mental state would be or how one would define it. Further, Murphy's interpretation would make subd. 3. redundant with subd. 2. because "kn[owing] her conduct created a likely risk of bodily harm" is not materially different than the mental state of recklessness. *See* WIS. STAT. § 940.295(1)(o) ("'Recklessly' means conduct that creates a situation of unreasonable risk of death or harm to and demonstrates a *conscious disregard* for the safety of the patient or resident.") (emphasis added). Murphy's interpretation is therefore untenable.

¶22 Murphy next argues the "health care provider" exception in WIS. STAT. § 940.295(3)(am) "supports the proposition that some deliberate risk-taking

is necessary for criminal liability to attach." Murphy acknowledges that the allegations within the four corners of the amended complaint do not establish that she is a "health care provider." Nevertheless, she asserts the circuit court reasoned that "one would expect a higher standard of care from a licensed health care provider than from a non-professional like Murphy and therefore if a health care provider is exempted from liability for 'ordinary negligence' or 'good faith error,' then, at a minimum, Murphy should be too."

¶23 We disagree. We fail to see how the language of WIS. STAT. § 940.295(3)(am) compels the conclusion that if a health care provider is exempted from § 940.295(3)(a)3. liability, then a "non-professional like Murphy" should likewise be exempted. If Murphy's assertion were true, then subd. 3. would be effectively eliminated. If every caregiver were exempt from prosecution for what Murphy labels as "inadvertent conduct,"[5] then no person would be subject to criminal liability under subd. 3. This absurd result contravenes our rules of statutory interpretation and, therefore, cannot be what the legislature intended. *See **Kalal***, 271 Wis. 2d 633, ¶46.

¶24 Finally, Murphy argues that because the "other 'neglect' related violations contained in WIS. STAT. § 940.295" require a mental state, § 940.295(3)(a)3. must require one as well. We again reject her argument. To begin, it is again premised on her erroneous assertion that "endeavor to" implies a mental state.

---

[5] Murphy cites to and discusses at length ***Easterling v. LIRC***, 2017 WI App 18, 374 Wis. 2d 312, 893 N.W.2d 265, in support of this proposition. That case adds no value to our analysis. ***Easterling*** does not analyze any of the statutes relevant to this appeal, nor does it involve analysis of issues using a legal standard similar to that used in determining the legal sufficiency of a complaint. *See id.*, ¶¶9-10.

¶25 Further, Murphy cites no case law supporting the notion that by applying the same penalty to both "recklessly neglects" in WIS. STAT. § 940.295(3)(a)2. and "neglects" in subd. 3., "the legislature implies there must be a similar level of culpability." To the contrary, the legislature's omission of a mens rea requirement in subd. 3. is a clear indication that one is not required.

¶26 A qualifying person under WIS. STAT. § 940.295(2) violates § 940.295(3)(a)3. if he or she, "[e]xcept as provided in par. (am), abuses, with negligence, or neglects a patient or resident." If subd. 3. establishes criminal liability for a qualifying person who abuses a patient or a resident "with negligence"—i.e., negligent conduct—it then follows that subd. 3.'s later provision providing criminal liability for a qualifying person who "neglects" a patient or a resident similarly does not require any intent for liability to arise. Murphy's interpretation would have us improperly read language into subd. 3. that is not there. *See Kalal*, 271 Wis. 2d 633, ¶¶45-46. Thus, for the foregoing reasons, the State was not required to allege that Murphy knew her conduct created a likely risk of bodily harm to Luke for the amended complaint to be legally sufficient.[6]

¶27 In the alternative, Murphy maintains the amended complaint is insufficient even if WIS. STAT. § 940.295(3)(a)3. has no mens rea requirement because the facts show she "endeavor[ed] to secure or maintain adequate care" for Luke. *See* § 940.295(3)(a)3. Again, in Murphy's view, the fact that she checked

---

[6] Both parties argue whether the absence of a mental state in WIS. STAT. § 940.295(3)(a)3. means "neglects a patient or resident" is a strict liability offense. Murphy does not allege that subd. 3. is unconstitutional if it is a strict liability offense, but, rather, she argues there is no reason to believe the legislature intended subd. 3. to be one. We decline to address this issue because its resolution is not dispositive of the issue before us—i.e., whether the amended complaint here is legally sufficient. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (observing that this court need not address an issue when resolution of another issue is dispositive to the appeal).

11

her rearview mirror prior to locking and leaving the bus proves she "endeavored to" secure or maintain Luke's care, and, thus, she cannot be liable for the crime charged.

¶28    This argument may provide a basis for Murphy's ultimate defense, but it is irrelevant on our review of the sufficiency of the amended complaint. Murphy is improperly weighing inferences from facts favorable to the State against inferences from facts favorable to her defense. *See **State v. Williams***, 198 Wis. 2d 479, 493, 544 N.W.2d 400 (1996). Whether a complaint is legally sufficient involves no weighing of competing facts and inferences. Instead, the proper inquiry is whether the amended complaint alleges facts from which a reasonable person could conclude Murphy committed the charged crime. *See **Chagnon***, 364 Wis. 2d 719, ¶7.

¶29    Here, Murphy's self-serving statement that she checked her rearview mirror prior to locking and leaving the bus, taken at face value, does not negate the facts supporting the conclusion that she ultimately did not return Luke to Stevens' home and left him trapped for hours on an empty, warm bus. A reasonable inference from the fact that Luke was left on the bus is that Murphy did not, in fact, check her rearview mirror prior to leaving. An alternative inference that arises from the facts alleged is that by only checking the rearview mirror (rather than, for example, also walking the bus aisle to be sure no one was left on board), Murphy failed to sufficiently endeavor to secure or maintain Luke's care. Thus, a reasonable person could conclude that the amended complaint contains sufficient facts to show that Murphy neglected Luke despite the fact that it states that she did check her rearview mirror prior to leaving the bus.

## II. The Fifth Element: Circumstances That Were Likely To Cause or Caused Bodily Harm

¶30     We agree with the circuit court's determination that the amended complaint alleged sufficient facts for a reasonable fact finder to conclude that the circumstances in which Murphy neglected Luke were likely to cause him harm. When considering the amended complaint alleged that Luke had limited capacities, that he remained on the bus for several hours by himself, and that he did not assist Officer Teske in gaining access to the bus, a reasonable person could infer that Luke could not unlock the bus from inside and escape by himself. He was trapped inside the bus on a summer evening where, after already being on the bus for over two hours, the temperature inside the bus was alleged to be approximately 118 degrees. Common sense dictates that being trapped inside a hot vehicle for an extended period of time could cause a person bodily harm—i.e., "pain or injury, illness, or any impairment of physical condition." *See* WIS JI—CRIMINAL 1272 (2019).

¶31     Nonetheless, Murphy argues Luke's "sweating and flushing" cannot constitute an "impairment of physical condition." Further, she faults the State for relying on an "irrelevant and speculative argument that it could have been much worse had [Luke] been left on the bus for a longer period," and Murphy asserts the amended complaint's reference to an "AVMA" test to calculate the approximate temperate inside the bus "lacks any evidentiary value."

¶32     Murphy's arguments are unpersuasive because she again ignores the standard required to determine a complaint's sufficiency. It is conceivable Murphy's arguments might ultimately be persuasive to a fact finder in further proceedings, but at this juncture, we use a common-sense approach to determine whether the amended complaint is minimally adequate. *See **Smaxwell***, 235 Wis. 2d 230, ¶5. The amended complaint in this case meets that low benchmark.

¶33     Moreover, contrary to Murphy's suggestion, the amended complaint here does not need to allege that Luke in fact had an "impairment of physical condition"—i.e., that he actually suffered bodily harm.  All that is required are facts alleging Murphy's neglectful conduct was "likely to cause" Luke bodily harm.  *See* WIS. STAT. § 940.295(3)(b)4.; WIS JI—CRIMINAL 1272 (2019).  Thus, although the State argues in response to Murphy's argument that the amended complaint alleged facts sufficient to show that Luke was, in fact, harmed, any absence of those alleged facts would not render the amended complaint insufficient.

## CONCLUSION

¶34     For the foregoing reasons, we conclude the circuit court erred by dismissing the State's amended complaint.  The amended complaint was sufficient because it alleged facts that would permit a reasonable person to conclude Murphy neglected Luke under circumstances that caused or were likely to cause him bodily harm in violation of WIS. STAT. § 940.295(3)(a)3. and (b)4.  We therefore reverse the order dismissing the amended complaint and remand for further proceedings.[7]

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] The State argues in the alternative that the amended complaint alleges sufficient facts to establish probable cause under a criminal negligence standard.  We need not address the State's alternative argument given our resolution of other grounds it raised in its appeal.  *See* ***Berge***, 113 Wis. 2d at 67.

14