**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 2, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP941-CR**

Cir. Ct. No. 2023CF642

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

V.

BARBARA E. MEYER-SPIDELL,

    DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Reversed and cause remanded for further proceedings.*

Before Gundrum, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   The State appeals from a judgment of dismissal of the complaint filed against Barbara E. Meyer-Spidell.  We reverse and remand the matter for further proceedings consistent with this opinion.

¶2     According to the complaint filed against her, in October 2016, Meyer-Spidell (then 49) met Sam[1] (then one month shy of 77) as he limped into a restaurant.  Approximately three weeks later, Sam paid $10,257 in cash to purchase a car for Meyer-Spidell.  In November 2017, Sam purchased a ranch home in New Berlin for Meyer-Spidell with a $205,232.54 cashier's check.  The realtor handling the sale expressed concern over Meyer-Spidell's changing stories about the purchase, that Meyer-Spidell didn't seem to "feel 100% great about" Sam buying her the home, and that the entire situation seemed "weird."  A few days before the closing, Sam also spent $1,608.01 on furniture for Meyer-Spidell.

¶3     Meyer-Spidell's version of the house purchase varied—it was purchased with a loan "fronted" by a real estate company, it was "flipped" for her, or her boss was getting her a land contract—but she bragged that her "take" of the transaction was "substantial over 200k of real estate [she will] end up with."  She also asked a friend to keep the address of the house a secret.

¶4     Sam's family and others had concerns about his cognitive decline prior to him meeting Meyer-Spidell.  In 2014, a psychiatrist and neurologist had

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we use a pseudonym instead of the victim's name.

All references to the Wisconsin Statutes are to the 2023-24 version.

been contacted regarding Sam's behavioral changes, including "aggression, forgetfulness, impatience, confusion," and "sun downing."[2]

¶5 Meyer-Spidell also recognized Sam's possible dementia, at least prior to the real estate purchase. In a text in February 2017, when discussing the possible purchase of a Las Vegas condominium, she described Sam as "a runaway elder with developing dementia" and instructed the realtor to contact her only. Meyer-Spidell also searched the internet on December 27, 2017, for "5 Early Signs of Dementia (and why everyone should know them)." In February 2018, she suggested to a friend that she knew someone who could help that friend out financially; he was older, enjoyed investing and "seeing that women were successful and comfortable, and cared for," and was "not all there, but a sweet guy." Even a waitress at the restaurant where Meyer-Spidell and Sam met (and where she observed the two of them together) said Sam "[w]asn't all there," that she saw him "deteriorating" over time, that he began staring off into space, and that his appearance and hygiene began to decline during the time he spent with Meyer-Spidell.

¶6 When questioned about the real estate purchase in July 2018, Sam told his family that he had bought a residence to rent to someone. According to Sam's family, this was not typical behavior. Nor was it true. The family then learned that Sam had bought three houses for three different women, including Meyer-Spidell, since November 2017.

---

[2] The psychiatrist and neurologist noted that "sun downing"—where an individual sleeps during the day and wanders at night—was typical for patients with dementia or those experiencing cognitive decline.

¶7    A geriatric assessment performed on Sam by a board-certified specialist in geriatric medicine on July 30, 2018, reflected that he was "*incapacitate[d] permanently*." The specialist further determined that "the incapacity interferes with [Sam's] ability to receive and evaluate information, use information in a decision process, protect himself from abuse, exploitation, neglect or rights violation, ... manage his property and financial affairs, address risk of property being dissipated in whole or in part, ... and prevent financial exploitation."

¶8    Another board-certified neuropsychologist prepared a report on Sam's cognitive abilities in 2020. He opined that Sam suffered from "Major Neurocognitive Disorder," and was "clearly" an "Elder Adult at Risk between 01/01/17 and 12/31/18." He concluded that Sam was "vulnerable to financial exploitation" that was "likely present since his family reported behavioral changes ... in 2014, and, given the progression in symptoms over time, it certainly was present during the interval in question." The neuropsychologist further opined that Sam "lacked capacity to consent to the purchases of residences for Barbara Meyer-Spidell on 11/16/17 by reason of a defective mental condition." Simply put, he believed "that because of a brain condition, [Sam] lacked the capacity to say 'no' to young women to whom he was attracted."

¶9    In April 2023, the State filed a complaint against Meyer-Spidell alleging one felony count of Theft—Movable Property (Special Facts) (Elder Adult at Risk) for her conduct between October 9, 2016 and August 13, 2018, in

which she obtained the car, residence, and furniture as described above.[3] In June 2023, Meyer-Spidell moved to dismiss the complaint, asserting it was defective for failure to state probable cause. She contended that the complaint failed to allege that Sam's deteriorating mental state invalidated his consent to the transfer of property. After the court commissioner denied the motion, Meyer-Spidell sought de novo review from the circuit court.

¶10 At the conclusion of a hearing, the circuit court granted the motion to dismiss the complaint, stating

> [T]here's never anything in the complaint that indicates that then [Sam] fell hand [sic] over heels, and did these transactions. It's all supposition, its speculation, there has to be more than that in criminal complaints.

Following the judgment of dismissal, the State appealed.

¶11 Whether a complaint sets forth probable cause is a legal determination that we review de novo. *State v. Reed*, 2005 WI 53, ¶11, 280 Wis. 2d 68, 695 N.W.2d 315. We examine the complaint to determine "whether there are facts or reasonable inferences set forth that are sufficient to allow a reasonable person to conclude that a crime was probably committed and that the defendant probably committed it." *Id.*, ¶12. "Where reasonable inferences may be drawn establishing probable cause to support a charge and equally reasonable inferences may be drawn to the contrary, the criminal complaint is sufficient." *State v. Grimm*, 2002 WI App 242, ¶15, 258 Wis. 2d 166, 653 N.W.2d 284.

---

[3] An earlier complaint (on these same grounds) had been filed against Meyer-Spidell two years prior and dismissed by the circuit court. This current complaint alleges additional facts not included in the prior complaint.

¶12    "A complaint is sufficient if it answers the following questions: '(1) Who is charged?; (2) What is the person charged with?; (3) When and where did the alleged offense take place?; (4) Why is this particular person being charged?; and (5) Who says so? or how reliable is the informant?'" *Reed*, 280 Wis. 2d 68, ¶12 (citation omitted). We evaluate the sufficiency of a complaint in a common-sense manner rather than in a hypertechnical manner. *State v. Chagnon*, 2015 WI App 66, ¶7, 364 Wis. 2d 719, 870 N.W.2d 27; *State v. Smaxwell*, 2000 WI App 112, ¶5, 235 Wis. 2d 230, 612 N.W.2d 756 (we consider minimal adequacy gauged by common sense).

¶13    The complaint answered all five questions. Meyer-Spidell was charged with theft of movable property from an elder adult at risk for conduct that occurred from October 9, 2016, through August 13, 2018, in New Berlin, when Sam, without the capacity to consent, agreed to provide her with a $10,000 car, a $205,000 residence, and $1,600 in furnishings for that residence. There are two expert opinions that establish Sam's dementia and cognitive inability to prevent financial exploitation, together with the testimony of three witnesses (a realtor, a waitress, and a friend of Meyer-Spidell) and Meyer-Spidell's own text messages.

¶14    Theft of movable property from an elder adult at risk, pursuant to WIS. STAT. § 943.20(1)(a) and (3)(d)6, has five elements: (1) the defendant intentionally transferred movable property of another; (2) the property's owner did not consent to the transfer; (3) the defendant knew that the owner did not consent to the transfer; (4) the defendant intended to deprive the owner permanently of the property; and (5) the owner was an individual at risk. *See* WIS JI—CRIMINAL 1441 (2022); WIS JI—CRIMINAL 1441B (2020).

¶15    There can be no dispute that the complaint sufficiently alleges that Meyer-Spidell received, and intended to permanently retain, the three items of property from Sam.  The circuit court's statements concerning supposition and speculation appear to relate to the second and third elements: whether Sam lacked capacity to consent due to dementia or cognitive decline during each of the three transfers and whether Meyer-Spidell knew he was unable to consent.  In a probable cause evaluation, however, the court must determine whether facts or reasonable inferences are sufficiently pled to lead to the conclusion that Meyer-Spidell *probably* committed the felony alleged in the complaint.  The court appears to have both misunderstood the elements of the crime and to have imposed a stricter and higher burden on the State.

¶16    Wisconsin's legislature has determined that a victim's consent is invalid where "the victim does not understand the nature of the thing to which the victim consents … by reason of ... defective mental condition, whether permanent or temporary."  WIS. STAT. § 939.22(48)(c).  As identified above, several facts are set forth in the complaint that reasonably support the inference that Sam lacked the capacity to consent to transfer his property to Meyer-Spidell.  There are also several texts and statements by Meyer-Spidell which establish that she knew she had a "runaway elder with developing dementia" whom she could exploit and whose assets she could potentially share with her friends.

¶17    The complaint contains sufficient allegations of fact to establish that Meyer-Spidell knew she was getting a windfall from her random meeting with Sam that would allow her to garner over $200,000 from a nice man who was "not all there."  At the very least, the reasonable inferences support that conclusion and the mere existence of other explanations does not necessarily negate probable cause.  *See Grimm*, 258 Wis. 2d 166, ¶15.  We are satisfied that the complaint was

sufficient for the prosecution to go forward. It was error for the circuit court to have dismissed the complaint, and we reverse the court's judgment and remand the matter for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.